IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:17 CR 356 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER JR. |
| | ) | |
| v. | ) | |
| | ) | |
| JOSEPH BRUCE HAGGERTY, | ) | GOVERNMENT'S SENTENCING |
| | ) | MEMORANDUM |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney for the Northern District of Ohio, and Michael A. Sullivan, Assistant United States attorney, and respectfully submits the within Government's Sentencing Memorandum.

## I.  **INTRODUCTION**

Defendant awaits sentencing after pleading guilty to one count of sexual exploitation of a child, in violation of 18 U.S.C. § 2251(a). As discussed below, the United States believes the factors set forth in 18 U.S.C. § 3553(a) demonstrate that a Guidelines-sentence would be sufficient but not greater than necessary to serve the purposes of sentencing.

## II.  **STATEMENT OF FACTS**

On January 17, 2017, the Kyle Police Department in Texas received an incident report filed by the mother of a minor child (age 13, MV1). (R. 11: PSIR, PageID 35, ¶ 7). The mother indicated that her daughter had been sending sexually explicit photographs over the internet to women and men through Skype and other social media sites. (Id.). The photos were of MV1

taking off her clothes. (Id.). MV1 indicated that she had primarily been communicating with Defendant, and had sent him multiple nude photographs. (Id.). Many of the conversations were on Skype. (Id. at PageID 36, ¶ 7). Defendant would tell MV1 how to dress, how to do her hair and makeup, and how she should behave. (Id.). MV1 provided Defendant with both her home and school addresses. (Id.).

The Kyle Police Department referred the case to Homeland Security Investigations (HSI) in Austin, Texas. (Id. at PageID 35, ¶6). Defendant provided his contact information to MV1, indicating that he resided on Wellington Road in Blacks Harbor, New Brunswick, Canada. (Id.).

MV1's laptop was analyzed and revealed an online dominant/submissive relationship between Defendant and MV1. (Id. at PageID 36, ¶ 8).  MV1 was able to identify Defendant. (Id.). She also provided his home address, telephone number, and an email account. Charges regarding MV1 remain under investigation. (Id.).

HSI in Austin, Texas, learned that Defendant was scheduled to arrive at Cleveland Hopkins International Airport in Cleveland, Ohio, on August 10, 2017, from Toronto, Canada. (Id. at ¶ 10).  HSI in Austin provided the information to HSI in Cleveland, along with two photos of Defendant that he previously sent to MV1. (Id.).

On August 10, 2017, Defendant took a taxi from Cleveland Hopkins International Airport to Linden Park, at or near 3401 Linden Road in Rocky River, Ohio. (Id. at ¶ 12).  Upon arriving at the park, Defendant was observed approaching and hugging a minor female (MV2), who was waiting for him with several bags containing clothing and other personal items. (Id.).  Defendant and MV2 then walked towards the taxi. (Id.).

While walking towards the taxi, Defendant and MV2 were approached by HSI agents. (Id. at ¶ 13).  Defendant immediately stated to the agents that he was there to meet and hang out

2

with MV2. (Id.).  Defendant knew MV2 by name and stated that he knew she was 17 years of age, but that he felt he was not doing anything wrong because the legal age of consent in Ohio is 16 years of age. (Id.).  The agents searched Defendant's duffel bag and found clothing and other personal items consistent with a period of travel that would last several days.  The agents also found an unopened package of 12 condoms, a package of baby pacifiers, and a stuffed tiger toy in one section of the bag. (Id.).  When asked about the purpose for which he had brought baby pacifiers, Defendant became belligerent and indicated it was his own business. (Id. at PageID 37, ¶ 13).

MV2 indicated that she met Defendant on the KIK application in December 2016. Defendant made subsequent contact with MV2 on Skype. (Id. at ¶ 14).  MV2 advised that Defendant knew her to be 16 years old and 17 years old during their communication, and she believed Defendant to be 48 years old. (Id.).  MV2 described Defendant as her boyfriend. (Id.). She advised that she consented to his visit and that she brought clothes to stay with him for the weekend, if she wished. (Id.).  MV2 admitted that Defendant was very controlling, that she was forbidden to speak to other males, and that he would verbally threaten her if she was unavailable to speak to him on Skype. (Id.).  MV2 claimed that the two communicated virtually every night since May 2017. (Id.).  MV2 stated that the calls would sometimes last hours and Defendant directed her to strip naked and to masturbate for him online. (Id.).

MV2 stated that she initially told Defendant she was uncomfortable masturbating on screen, but relented when she became frightened after he used profanity and verbal abuse towards her. (Id.).  Defendant was also nude and would masturbate and ejaculate during these sessions. (Id.).  Defendant gave MV2 the nicknames "Kitten," "Little Girl," and "Princess." (Id.).

MV2 was required to call Defendant "Daddy" or "Joe." (Id.). Defendant sent MV2 markers, and directed her to write "I belong to Daddy" all over her body. (Id.).

MV2 was aware that she and Defendant would be going to a hotel in Lakewood, Ohio. (Id.). MV2 was aware that the hotel room had only one bed, and Defendant told her to bring lingerie, as well as a pink sex toy and socks that he had bought her. (Id.).

After the agents conducted the initial interviews with Defendant and MV2, they contacted the Rocky River Police Department for assistance. (Id. at ¶ 16). The Rocky River Police Department subsequently arrested Defendant on charges of Interference with Custody. (Id.).

At approximately 1:40 p.m., subsequent to Defendant's local arrest, MV2 received a call on her cell phone from Defendant. (Id. at PageID 38, ¶ 17). Defendant was in the booking cell at the Rocky River Police Department. (Id.). MV2 was sitting with HSI agents. MV2 answered the phone and spoke with Defendant for approximately four minutes and 35 seconds. (Id.). The conversation was recorded. (Id.). Defendant called MV2 by name and repeatedly referred to her as "baby." (Id.). When MV2 advised that she was aware that Defendant had engaged in similar behavior with other minors, he continually denied it and told her that the law enforcement officers were lying to her. (Id.). Defendant stated to MV2, "I'm in jail right now with my future in jeopardy because I love you." (Id.).

On August 11, 2017, the Royal Canadian Mounted Police (RCMP), Internet Child Exploitation Unit executed a search warrant at Defendant's residence. (Id. at ¶ 18). The RCMP seized several electronic devices for forensic analysis, including two laptops, an external storage device, and other storage media. (Id.). A letter from MV2 dated approximately 3 weeks prior was seized, and contact information for both MV1 and MV2 was found, along with information

4

belonging to five other possible victims. (Id.).  During initial analysis of one of the computers, a considerable number of images of MV2 were discovered. (Id.).  The images were created from videos of MV2 in various stages of undress, while she was nude, during manual masturbation, and during masturbation with objects. (Id.).

Further investigation revealed that a total of 175 images were screenshots of MV2 that were produced by Defendant. (Id. at ¶ 19).  The images of MV2 were produced via Skype video chats that took place between May 14, 2017, and July 15, 2017. (Id.).  Of the 175 images produced, 18 video snapshot images depicted MV2 engaging in various activities of erotic and/or pornographic nature. (Id.).

Agents found 2,589 Skype calls between the dates of April 4, 2017, and August 10, 2017. Defendant initiated many of the calls that were unanswered or declined. (Id. at ¶ 20).  Defendant continuously attempted to initiate and maintain Skype contact with MV2 at various times of the day, even when she was unable to communicate. (Id.). When Defendant and MV2 engaged in Skype video chats, Defendant exhibited severely emotionally abusive behavior, including profanity, threats towards MV2, and even threats of suicide. (Id.). Defendant provided MV2 with money via Western Union and gifts in furtherance of their relationship. (Id.). MV2 purchased a laptop with money Defendant sent her. (Id.).

MV2's IPhone revealed a conversation between MV2 and Defendant that occurred on July 15, 2017. (Id. at PageID 39, ¶ 20). MV2 communicated to Defendant that she did not feel comfortable meeting him at a hotel room. (Id.).

III.     **TWO-POINT ENHANCEMENT FOR OBSTRUCTION OF JUSTICE**

The government objects to the PSIR where it indicates that the obstruction-of-justice adjustment pursuant to U.S.S.G. § 3C1.1 does not apply. The government contends that the two-level enhancement applies to Count 1.

An enhancement for obstruction of justice is warranted under USSG § 3C1.1 where the defendant engages in "intimidating, or otherwise unlawfully influencing a … witness … or attempting to do so." U.S.S.G. § 3C1.1 cmt. n. 4(A); See also, United States v. Parker, 512 F.App'x 525, 526 (6th Cir. 2013). There is sufficient information, regarding the phone call that Defendant made to MV2 while in the booking cell at the Rocky River Police department, to apply the obstruction-of-justice adjustment.

Defendant attempted to unlawfully influence MV2 when he called her from jail. He told her that law enforcement officers were lying to her and that he was "in jail right now with my future in jeopardy *because I love you*." Defendant blamed MV2 for the situation he was in and attempted to manipulate her by saying the police were lying to her about his conduct with other victims, when in reality he was the one lying to her about his conduct with other victims.

In Parker, the defendant called his girlfriend from jail and "berated her for being responsible for the position he was in because she had let the police into her apartment to arrest him, had given them permission to search the apartment, and had not claimed responsibility for the firearm" that was found. Parker, 512 F.App'x at 526.  The defendant told her that "she would get 'a slap on the wrist' while he was going to prison." Id.  The Court agreed with the district court that the defendant was "attempting to intimidate or influence this witness." Id.  The Court further stated that, "We have upheld obstruction of justice enhancements in similar cases." Id.

(citing United States v. Waldon, 206 F.3d 597, 608-09 (6th Cir. 2000); United States v. Bingham, 81 F.3d 617, 632 (6th Cir. 1996)).

Much like in Parker, Haggerty attempted to unlawfully influence MV2 by calling her from jail, placing blame on her, and manipulating her.

IV.    **GUIDELINE LEVEL**

If the Court grants the government's objections regarding the two-level enhancement for obstruction of justice, the resulting guideline range will increase two levels to a level 42.

Defendant's argument that the child pornography sentencing guidelines are excessive is misplaced.  The recent criticism from a variety of district courts has been leveled at the non-production guidelines, U.S.S.G. §2G2.2.  Here, Defendant has been convicted of sexual exploitation of a minor in violation of 18 U.S.C. §2251, implicating the production guideline section: U.S.S.G. §2G2.1.

VI.    **SENTENCING FACTORS**

The first step in sentencing a defendant post-Booker, is to correctly calculate the Guidelines range and to recognize the advisory nature of that range. Gall v. United States, 552 U.S. 38, 51 (2007).  It is the United States' position that the PSIR has incorrectly omitted a two-level enhancement for obstruction of justice; subject to these corrections being made, the range should be adopted as the advisory Guidelines range by the Court. Second, a sentencing court post-Booker is required to impose a sentence that is "sufficient but not greater than necessary," 18 U.S.C. § 3553(a), to "comport with the goals of criminal justice." United States v. Denny, 653 F.3d 415, 420 (6th Cir. 2011).  To assist the Court in ensuring that a sentence is "sufficient," § 3553(a) lists factors that should be considered before the imposition of a sentence. Id.  The

following factors are relevant to the determination of what sentence is "sufficient" to meet the statutory purpose:

A. **Section 3553(a)(1): The sentence should reflect the nature and circumstances of the offense and the history and characteristics of the defendant.**

The nature and circumstances of Defendant's conduct was disturbing. Defendant preyed on young girls in order to persuade his victims into conversing with him over Skype, sending nude pictures to him, and masturbating in front of him so that he could do the same.  Upon receiving the video images of his victims, he would take screen shots of them while nude and committing sexually explicit acts so that he could produce the photos for later use.  Defendant was emotionally and verbally abusive to these young girls, manipulating them to succumb to his will.  He used profanity, threats towards MV2, and threats of suicide.  He sent MV2 money and sexual "gifts."  This conduct lasted at least from December 2016 to August 2017. Additionally, Defendant traveled to Cleveland, from Canada, to meet up with MV2, with the intention of taking her to a hotel room and having sexual relations with her.

Concerning Count 1, Sexual Exploitation of a Child, Defendant's sentence should reflect the manipulative and abusive nature of his conduct with his victims. Defendant verbally abused MV2, he lied to MV2, telling her that he loved her, forbade her from speaking to other males, and bought MV2 gifts. All of this was in an attempt to get her to communicate with him over the internet so that he could sexually exploit her.  Further, the length and repeated nature of the exploitation should be taken into account in sentencing.

B. **Section 3553(a)(2)(A): The sentence must reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.**

The Sixth Circuit Court of appeals has recognized the severity and seriousness of crimes involving the sexual exploitation and abuse of minors.  See United States v. Vowell, 516 F.3d

8

503, 512-13 (6th Cir. 2008).  In Vowell, the Sixth Circuit affirmed the district court's 65-year sentence for coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, and for possession of child pornography. Id.  The Court affirmed, noting the district court's finding that the "heinous nature of his crimes demonstrated the seriousness of the offense". Id.  In United States v. Dobrowolski, 406 F.App'x 11, 13, 2010 WL 4723799, at *2-3 (6th Cir. 2010), the court affirmed two 10-year mandatory minimum sentences imposed for coercing and enticing a minor to engage in illicit sexual conduct and for traveling in interstate commerce with the intent to engage in illicit sexual conduct. Id.

> This purpose—essentially the "just deserts" concept—should be reflected clearly in all sentences; it is another way of saying that the sentence should reflect the gravity of the defendant's conduct. From the public's standpoint, the sentence should be of a type and length that will adequately reflect, among other things, the harm done or threatened by the offense, and the public interest in preventing a recurrence of the offense.

United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing United States v. Pugh, 515 F.3d 1179, 1195 (11th Cir. 2008) (quoting S. Rep. No. 98-225, 75-76, 1984 U.S.C.C.A.N. 3528-59).  Because the punishment should fit the crime, it follows that the more serious the criminal conduct was then the greater the need there is for retribution and the longer the sentence should be.  Defendant preyed on young girls by emotionally abusing and manipulating them into sending nude video images of themselves to him.  He took screen shots of those images, producing exploitative pictures.  He obtained the home addresses and phone numbers of both MV1 and MV2.  Defendant traveled to Cleveland to meet MV2 after exploiting her. The nature of his conduct was reoccurring, and he victimized multiple young girls.  Defendant's actions were severe and serious, and the heinous nature of his actions demonstrate the seriousness of his offense.

9

The Court should also consider the impact of Defendant's conduct on the victim. "Child pornographers commit serious crimes which can have devastating effects upon society and, most importantly, upon children who are sexually abused." United States v. Moore, 916 F.2d 1131, 1139 (6th Cir. 1990). Defendant produced numerous video snapshot images depicted MV2 engaging in various activities of erotic and/or pornographic nature. MV2 is going to have to live the rest of her life knowing that she was exploited by someone that manipulated her into thinking he was her "boyfriend." MV2 will never be able to know that there are not more photos just like these floating around for the general public to see.  Further, the emotional abuse that Defendant committed towards MV1 and MV2 demonstrates how serious his conduct actually was.

C. **Section 3553(a)(2)(B): The sentence must afford adequate deterrence to criminal conduct.**

The Sixth Circuit Court of Appeals has stated that, "deterrence has both an individualized and more general component[.]" United States v. Robinson, 669, F.3d 767, 777 (6th Cir. 2012). A district court must consider, and the sentence imposed must reflect, the need for general deterrence. United States v. Musgrave, 761 F.3d 602, 609 (6th Cir. 2014).

> Affording adequate deterrence is also closely linked to reflecting the seriousness of the offense. Thus… where a district court fails to impose a sentence that adequately reflects the seriousness of the offense, that court has almost always also failed to afford adequate deterrence to criminal conduct. (citations omitted).

United States v. Rothwell, 847 F. Supp. 2d 1048, 1069 (E.D. Tenn. 2012) (citing Robinson 669 F.3d at 777; United States v. Christman, 607 F.3d 1110, 1121 (6th Cir. 2010); United States v. Camiscione, 591 F.3d 823, 834 (6th Cir. 2009)).  Sexually exploiting children is extremely serious conduct and deterring future, similar criminal behavior and protecting the public should be a focus when considering Defendant's sentence.  Due to the seriousness of Defendant's

actions, and the actions of other defendants who commit similar acts, it is crucial that general deterrence is given significant weight at sentencing.

      D. **Section 3553(a)(2)(C): The sentence must protect the public from further crimes of the defendant.**

This factor asks the Court to consider the incapacitation or specific deterrence of the defendant. See Irey, 612 F.3d at 1210.  Defendant's track record and pattern of activity indicate that he will re-offend with other minors in the future.  His conduct was not a single occurrence, it was a pattern of sexually exploiting as many as seven victims over a course of months.  Both MV1 and MV2 have indicated that Defendant was emotionally abusive towards them, obtained their addresses, and knew where they lived.  Defendant's sentence should be one that keeps him from re-offending with either victim here or any other minors.

VII.    **CONCLUSION**

For the reasons stated above, the United States believes that consideration of the 18 U.S.C. § 3553(a) factors demonstrates that after the governments proposed correction to the Guidelines calculation, a sentence within the advisory Guidelines would be sufficient but not greater than necessary to serve the purposes of sentencing in this case.

                          Respectfully submitted,

                          JUSTIN E. HERDMAN
                          United States Attorney

By:     /s/ Michael A. Sullivan__
                          Michael A. Sullivan (NY 2249993)
                          Assistant U.S. Attorney
                          Suite 400, U.S. Courthouse
                          801 West Superior Avenue
                          Cleveland, Ohio 44113
                          Tel. No. (216) 622-3977

Fax No. (216) 522-2403
e-mail: michael.a.sullivan@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on the 7th day of May, 2018, a copy of the foregoing Government's

Sentencing Memorandum was filed electronically. Notice of this filing will be sent by operation

of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

/s/Michael A. Sullivan_____
Assistant U.S. Attorney

12